## Case No. 11,181.

### PIPER v. BROWN et al.

[Holmes, 196; 6 Fish. Pat. Cas. 240; 3 O. G. 97.] [1]

Circuit Court. D. Massachusetts. Jan. 21, 1873.

PATENTS—INFRINGEMENT—RECOVERY OF PROFITS —FINDING OF MASTER—INTRODUCTION OF FURTHER EVIDENCE.

1. The profits recoverable in equity by the owner of a patented invention from an infringer, are such only as result directly and immediately from the infringement. Remote and contingent profits are not recoverable.

2. The defendants, in a suit in equity, by their use of the complainant's patented process of preserving fish, were enabled to withdraw fish from the market, and thus obtain a higher price for their unpreserved fish than they would otherwise have received. Held, that the profits resulting from such increased price were too remote and indirect to be charged against the defendants as profits realized from their infringement.

3. The finding of a master, upon a question of fact as to the construction of an apparatus, will not be reversed where it is based not only upon evidence before him not fully reported to the court, but also on his own examination of the apparatus, made by consent and in the presence of the parties.

4. The use of a certain apparatus by the defendants having been adjudged an infringement of the complainant's patent for a process, they claimed, on the accounting, to have so altered it that its use thereafter no longer infringed the patent; and exhibited to the master such portions of it as were not in use, but, though requested, refused to exhibit the portions which were in use. Held, that the master was justified in finding that the defendants still infringed the patent by the use of the apparatus.

5. In estimating the profits realized from infringement of a patent, compensation is not allowed the infringer for his time and labor.

6. After the master had submitted a draft of his report to counsel for the parties, the defendants asked leave to introduce further evidence. Held, that the request was rightly denied by the master.

[This was a bill in equity by James Brown and others against Enoch Piper. The court held complainant entitled to an injunction and account. Case No. 11,180.]

Hearing on exceptions to a master's report of profits made by the defendants from their infringement of letters-patent [No. 31,736] granted the complainant March 19, 1861, for a process of preserving fish, &c. A ruling not specifically mentioned in the opinion was as follows: After the master had submitted a draft of his report to the counsel for the parties, the defendants asked leave to introduce further evidence, which request the master denied, holding that the evidence was offered too late.

Causten Browne and Jabez S. Holmes, for complainant.

[1] [Reported by Jabez S. Holmes, Esq., and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]

B. R. Curtis and Edward Avery, for defendants.

[The respondents' infringing business was one occupying but a portion of each year. At the close of each season the accounts were closed, and at no time did the business of one year run into or connect itself with that of another. Under these circumstances, the master reported disallowing the claim of the defendants to deduct the amount of a loss alleged to have been suffered in the business of 1869 from the profits made in the other years.] [2]

SHEPLEY, Circuit Judge. Exceptions were duly taken to the report of the master in this case, by both complainant and defendants. Complainant excepts that the master finds as a fact that the defendants, by preserving fish by the patented process and withdrawing them from the market during the season of abundance, have been enabled to demand, and have received, a large price for their green unpreserved fish remaining in their hands for sale in the market; that they have received for such green fish one and one-half cent per pound more than they would have done had they not withdrawn from the market the preserved salmon; and that the amount of green fish on which such advanced price was received was 413,612½ pounds, making a total profit of $6,204.19; and he claims that the master erred in disallowing the item of $6,204.19, profits resulting from the enhanced price of green fish.

The master finds that the gain and profit to the defendants, resulting from said enhanced price of one and one-half cent per pound on the sales of green fish in the said year, is not gain or profit with which defendants are to be here charged, because it is an incident of trade too remote and indirect to be charged in this account.

Where profits are recoverable by the owner of a patented invention against an infringer, they are such profits or gains as result directly or immediately from the wrongful act of the infringer. Remote and contingent profits or gains, depending upon the result of successive schemes or investments, are never allowed. The resultant profits are ordinarily best arrived at by determining the difference between the actual ascertained cost and the actual ascertainable value to the infringer, which value, in case of sales by him, is the price obtained or the market value of the thing sold. Profits contingent upon future bargains or speculations, or future states of the market, are not estimated, and are not recoverable. The distinction between such profits as are direct and immediate, and those which are remote and contingent, is recognized in Masterton v. Mayor, etc., 7 Hill, 61, and Philadelphia, W. & B. R. Co. v. Howard, 13 How. [54 U. S.] 307.

The second exception of the complainant

is to the finding of a fact by the master. The master found as a fact, that, by the alterations made during the season of 1870, in defendants' apparatus, the atmosphere of the preserving-chamber mingled with the atmosphere of the chamber containing the freezing-mixture, making practically one atmosphere. The whole evidence upon which the master based this finding is not reported. In fact, the report leaves it to be inferred, that, upon this question, in addition to the light afforded by the evidence of experts introduced by the defendants, the master was aided by the evidence of his own examination of the premises at Charlestown, at an inspection of them made by him in the presence and by consent of the parties. Under such circumstances, the finding of the master on a question of fact will not be reversed. Sparhawk v. Wills, 5 Gray, 423; Boston Iron Co. v. King, 2 Cush. 405; Adams v. Brown. 7 Cush. 222.

Defendants except to the master's report as to his findings in respect to the operations of the year 1870. The defendants having been enjoined by the court from the use of their Charlestown apparatus as used by them in 1866 and 1867, continued during the years 1868 and 1869 to preserve fish by the complainant's process in a similar apparatus situated in Cambridge, and belonging to other parties. Such use of the Cambridge apparatus having been also adjudged an infringement, they returned, in the year 1870, to the use of the building in Charlestown. The master finds that the apparatus at Charlestown was originally so constructed, that its use by them, for the purpose of freezing and preserving fish, was an infringement of the complainant's patent. They attempted to satisfy the master, and did satisfy him, that at some time between the 20th of June and the 3d of December, 1870, they so altered their apparatus that it could be used without infringing complainant's patent. Whether it was so altered before Dec. 3, 1870, they did not prove. The finding of the master, that the use of the apparatus so altered would not infringe the complainant's patent, was certainly as favorable for the defendants as the evidence would justify. The expert who testified upon the subject did not believe that it made any practical difference in the process whether the openings between the two chambers were large or small. He rejects the whole theory upon which complainant applied for his patent, and utterly ignores any utility in the process of the plaintiff, so far as it is distinguishable from other known processes and patented to him. From his point of view, the communication between the atmosphere of the two chambers being productive of no change whatever, being entirely immaterial (except during the time of replenishing the chamber containing the freezing-mixture), the smallest orifice between the two would have been as available to take the apparatus out from the pale of

infringement as the largest; and this he frankly states, in substance, in his testimony. Defendants could not reasonably object that a finding was not sufficiently favorable to them based upon this evidence. In coming to this conclusion, the master was unquestionably aided, if not governed, by the evidence of his own senses when he made the personal inspection. But at Charlestown he did not witness the process. He only saw a part of the apparatus not in use. Defendants contend that the master having found that the alterations made at some time prior to Dec. 3 were such that the use of the altered apparatus to preserve fish would not infringe the patent, the burden of proof was then upon the complainant to show that the apparatus when used was restored to its former state. The answer to this position is; that the master has never found any change in the process or in the apparatus in use. Defendants exhibited to the master such portions of the apparatus as were not in use, but neglected, and on request refused, to exhibit the chamber in which the fish of the catch of 1870 was being preserved. The patent is for a process, not for an apparatus. The exhibition of the modified apparatus not in use was of little moment compared to the exhibition of that part of the apparatus in which the process was going on. This apparatus, or this portion of the apparatus, in which defendants preserved salmon in Charlestown in 1870, was never shown to the master to have contained the alterations in the summer of 1870, at the time the freezing and preserving were in process.

No commissions were paid by defendants for selling the fish preserved by them. It is not customary in estimating profits from an infringement to allow the infringing parties compensation for their own time and labor. The master's decision rejecting the allowance of commissions is sustained. His report is also sustained upon the other points to which exceptions are taken, for the reasons stated by him in his report.

Decree accordingly.

[For other cases involving this patent, see note to Piper v. Brown, Case No. 11,180.]